IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| VICTOR CHARLES FOURSTAR, JR., <br><br> Plaintiff, <br><br> vs. <br><br> DAVID BERKEBILE, et al., <br><br> Defendants. | Cause No. CV 20-99-GF-SPW-TJC <br><br><br> ORDER |

Plaintiffs Fourstar and Mitchell submitted a complaint on October 15, 2020. Plaintiff Fourstar, proponent of the bulk of the allegations, moved to proceed in forma pauperis. Plaintiff Mitchell signed the complaint, *see* Compl. (Doc. 2) at 9, but he did not pay the filing fee and did not move to proceed in forma pauperis.

On February 9, 2021, the Court reserved ruling on Fourstar's motion to proceed in forma pauperis and ordered either that Mitchell also move to proceed in forma pauperis or that Fourstar and Mitchell tender the full filing fee of $400.00. Mitchell was advised that failure to timely respond to the order would result in his dismissal. *See* Order (Doc. 8) at 2 ¶¶ 1–3.

Mitchell did not respond to the Order. Fourstar, therefore, is the sole plaintiff.

1

## I. Motion to Proceed In Forma Pauperis

Fourstar has had at least three actions dismissed as frivolous or for failure to state a claim. As a result, he is not permitted to proceed in forma pauperis unless he shows that he was in imminent danger of serious physical injury when he filed his pleading. *See Andrews v. Cervantes*, 493 F.3d 1047, 1053–54 (9th Cir. 2007); 28 U.S.C. § 1915(e)(2)(B)(ii), (g)–(h).

Although Fourstar's allegations are conclusory, they raise serious claims about his health, and the danger to him was ongoing, as he was still held at Crossroads when he filed on September 14, 2020. He meets the exception outlined in § 1915(g). The Court will grant the motion to proceed in forma pauperis. *See* Account Statement (Doc. 1-1).

## II. Analysis

Fourstar alleges wrongs occurring between "mid-July 2020" through the time he filed his complaint on October 10, 2020. *See* Compl. (Doc. 2) at 8 ¶ III(A)(2); *id.* at 16.

Throughout that time period, Fourstar was in federal custody. On July 2, 2020, United States Magistrate Judge John Johnston ordered him detained pending a final hearing on a petition to revoke his federal supervised release. *See* Minutes (Doc. 341), *United States v. Fourstar*, No. CR 02-52-GF DLC-JTJ (D. Mont. July 2, 2020). On July 21, 2020, United States District Judge Dana L. Christensen

revoked Fourstar's supervised release and sentenced him to serve four months in custody. *See* Judgment on Fifth Revocation (Doc. 356) at 2, *Fourstar*, No. CR 02-52-GF-DLC (D. Mont. July 21, 2020). Fourstar was held at Crossroads Correctional Center ("CCC") in Shelby, Montana, a private prison.

Fourstar asserts a right to relief under several provisions of law. The Court will address each.

## A. First Amendment

### 1. Access to Courts

Fourstar alleges that a prison librarian, Defendant Smitherene, failed to provide him access to the law library, case law, and photocopies during "improper Hep[atitis C] and COVID-19 screening, treatment and quarantine procedures" at CCC, violating his "right to access the courts in his supervised release proceedings and its ancillary matters appropriate to it," Compl. (Doc. 2) at 9, and his "right to confidential attorney-client communications," *id.* at 12. He also contends that he was unable "to fully and fairly appeal his revocation of supervised release and prosecute his ancillary matters appropriate to those proceedings." *Id.* at 13. Fourstar also alleges that Defendants Kloos, Clark, Eliason, an unknown federal probation officer, and Murtz "failed to provide access to legal calls . . . during Plaintiffs Hep C and COVID-19 quarantine at CCC." *Id.* at 9–10.

Fourstar's allegations fail to state a claim for violation of his right of access

3

to the courts. This right refers to "the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey*, 518 U.S. 343, 356–57 (1996). Throughout the time period of the complaint, Fourstar was represented by counsel in connection with his supervised release. *See* Orders (Docs. 353, 368), *Fourstar*, No. CR 02-52-GF-DLC (D. Mont. July 21, August 11, 2020); Order and Notice of Appearance (Docs. 7, 15), *United States v. Fourstar*, No. 20-30157 (9th Cir. Aug. 11 and Nov. 18, 2020). Appointment of counsel under the Criminal Justice Act conferred on Fourstar the capability of defending himself in the fifth revocation proceeding, appealing the fifth revocation judgment, and participating in "ancillary matters." *See* 18 U.S.C. § 3006A(a)(1)(E), (c).

Further, Fourstar's final revocation hearing on the fifth petition to revoke his supervised release occurred on July 21, 2020. A timely notice of appeal was filed. At Fourstar's request, two lawyers withdrew from representation. *See* First Counsel Mot. to Withdraw (Doc. 4) at 2, *United States v. Fourstar*, No. 20-30157 (9th Cir. filed Aug. 4, 2020); Second Counsel Mot. to Withdraw (Doc. 12), *Fourstar*, No. 20-30157 (9th Cir. Oct. 16, 2020). On October 8, 2020, Fourstar personally filed a three-page motion and brief requesting new counsel, identifying issues he wanted counsel to raise and citing and quoting case law. *See* Fourstar Mot. for New Counsel (Doc. 11), *Fourstar*, No. 20-30157 (9th Cir. Oct. 8, 2020).

He also attached an affidavit, dated October 5, 2020, stating that he had spoken with counsel once but otherwise his telephone contact with counsel had been limited to a paralegal and a legal researcher. *See id.* at 4. On November 18, 2020, new counsel was appointed to represent him. *See* Notice of Appearance (Doc. 15), *Fourstar*, No. 20-30157 (9th Cir. Nov. 18, 2020). The opening brief was filed on January 7, 2021. *See* Appellant Br. (Doc. 20), *Fourstar*, No. 20-30157 (9th Cir. Jan. 7, 2021).

Given the posture and timing of the appellate case, Fourstar's lack of access to the law library, case law, photocopies, or legal calls at CCC during the time period of the complaint, mid-July 2020 to October 10, 2020, did not materially interfere with his ability to communicate with counsel. Consequently, his right of access to the courts was not violated. Fourstar does not allege a violation of his Sixth Amendment right to the effective assistance of counsel. It may be worth noting, however, that he could not have suffered prejudice from the alleged non-performance of two attorneys who withdrew before the opening brief was filed. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

This claim is dismissed.

### 2. Administrative Grievances

Fourstar alleges that a case manager and a counselor, Defendants Kloos and Clark, respectively, acted with United States Probation Officer Michael Eliason in

5

failing to provide administrative grievance forms. *See id.* at 9–10. He also claims that Defendant Murtz failed to appropriately train Defendants Kloos and Clark. *See id.* at 10. As a result of not having the forms, Fourstar contends, he was deprived of his "right to access the administrative remedy programs under the 2018 First Step Act." *Id.* at 13.

A prisoner's grievances are petitions for redress protected by the First Amendment. *See, e.g., Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015). Fourstar does not allege that he was unable to present grievances to prison staff. He says he was not given forms appropriate to advance his complaints under the First Step Act. This allegation, therefore, is addressed below, in Part J, with Fourstar's other allegations under the First Step Act.

### B. Eighth Amendment

Fourstar complains of the conditions of his confinement, such as lack of recreation and showers, and lack of adequate medical treatment. *See, e.g.*, Compl. at 8 (Berkebile), 9 (unknown nurses and Kloos), 10 (Bludworth and Perkins), 11 (Molnar). These allegations implicate the Eighth Amendment's proscription against cruel and unusual punishment. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 101–06 (1976).

As noted, throughout the time period of his complaint, Fourstar was in federal custody at CCC, a private prison. Assuming, for the sake of argument, that

6

the defendants acted under color of law, *see, e.g.*, *Pollard v. The GEO Group, Inc.*, 607 F.3d 583, 588–593 & n.11 (9th Cir. 2010),[1] they could only have acted under color of federal law, not state law. Fourstar cannot proceed under 42 U.S.C. § 1983. He may proceed, if at all, only under the reasoning of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[2]

Because *Bivens* is a judicially-created right of action, it will, at most, fill in an occasional deep gap where legislation or common law cannot provide adequate redress. Including *Bivens*, the Supreme Court has extended the right of action only three times. *See, e.g.*, *Davis v. Passman*, 442 U.S. 228, 245 (1979) (without new right of action, congressional staff member had no recourse for sex discrimination); *Bivens*, 403 U.S. at 410 (without new right of action, plaintiff could not sue federal law enforcement officer for Fourth Amendment violation); *Carlson v. Green*, 446 U.S. 14, 23 (1980) (without new right of action, Congress's prescribed remedy did not adequately deter Eighth Amendment violations by federal jailers). The Court has declined to extend its remedy in at least six other cases, including a reversal of the Second Circuit's recognition of a *Bivens* claim against a private prison. *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61,

---

[1] The opinion was amended on December 10, 2010, when the court denied rehearing en banc. *See Pollard*, 629 F.3d 843, 845 (9th Cir. 2010). No change was made to the pages cited.

[2] The same would be true of claims under the First Amendment access-to-courts claim. But, because Fourstar does not state a claim under the First Amendment, there is no need to consider whether he could pursue it on a *Bivens* theory.

63 (2001).

The occasions when the Supreme Court has declined to extend *Bivens* clearly indicate that *Bivens* does not extend to all the same contexts or situations as the remedy set forth by Congress in 42 U.S.C. § 1983. Unlike § 1983, "[a] *Bivens* remedy [remains] a subject of judgment." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). It might not be available even if the lack of a *Bivens* remedy leaves a plaintiff with a remedy that is not fully appropriate to his injuries. *See id.* at 555. At any rate, courts are very unlikely to imply a remedy to vindicate federal constitutional rights if injuries caused by defendants acting under color of federal law can be redressed by already-existing tort remedies under state law. *See id.* at 120–21. And, as the Supreme Court has noted, "prisoners ordinarily can bring state-law tort actions against employees of a private firm." *Minneci v. Pollard*, 565 U.S. 118, 126 (2012) (emphasis omitted).

If Montana law did not allow prisoners to bring state-law tort actions against private persons, perhaps *Bivens* might supply a remedy. But Montana law recognizes that "[a] jailer owes a duty to the prisoner to keep him safe and to protect him from unnecessary harm. Reasonable and ordinary care must be exercised for the life and health of the prisoner." *Pretty On Top v. City of Hardin*, 597 P.2d 58, 60–61 (Mont. 1979). "A sheriff owes to a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him

8

medical aid when necessary, and to treat him humanely and refrain from oppressing him." *Id.* (quoting *Kendrick v. Adamson*, 51 Ga. App. 402, 180 S.E. 647 (Ga. Ct. App. 1935)).

In fact, in the latter sentence, the Montana Supreme Court used in 1979 exactly the same words the United States Supreme Court used in 2012: "'sheriff owes to a prisoner placed in his custody a duty to keep the prisoner safely and free from harm, to render him medical aid when necessary, and to treat him humanely and refrain from oppressing him[.]'" *Minneci*, 565 U.S. at 128 (parenthetically quoting *Thomas v. Williams*, 105 Ga. App. 321, 326, 124 S.E.2d 409, 412–13 (Ga. Ct. App. 1962)). The *Minneci* Court found these words constituted "specific authority indicating that state law imposes general tort duties of reasonable care (including medical care) on prison employees in every one of the eight States where privately managed secure federal facilities are currently located." *Minneci*, 565 U.S. at 128 (parentheses in original). This Court must likewise conclude that Montana law imposes equivalent duties on employees and officers of privately managed prisons who are charged with the custody of federal prisoners.

The conduct Fourstar attributes to the Crossroads defendants "is of a kind that typically falls within the scope of traditional . . . tort law" in Montana. *Minneci*, 565 U.S. at 131; *Pretty On Top*, 597 P.2d at 60–61; Mont. Code Ann. §§ 27-1-104, -105(2), -202. Consequently, *Bivens* does not provide a remedy in

Montana for Eighth Amendment violations allegedly committed by private persons acting under color of federal law. Fourstar "must seek a remedy under state tort law." *Minneci*, 565 U.S. at 131. His claims under the Eighth Amendment are dismissed.

### C. Fifth Amendment

Fourstar claims he was deprived of due process. *See* Compl. at 8 ¶ III(A)(1). The same allegations that could, under other circumstances, support claims under the Eighth Amendment might support claims under the Fifth Amendment's guarantee of substantive due process.

But the Supreme Court "has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright v. Oliver*, 510 U.S. 266, 271–72 (1994) (citing *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). To the extent guideposts exist under the circumstances of this case, they exist because Fourstar alleges "a claim for physical or related emotional harm suffered as a result of aggravated instances of the kind of conduct that state tort law typically forbids." *Minneci*, 565 U.S. at 127–28. And that fact militates against any extension of *Bivens*, in this case, to provide a federal remedy to Fourstar for Fifth Amendment violations allegedly committed by private persons acting under color of federal law.

Again, Fourstar "must seek a remedy under state tort law." *Minneci*, 565 U.S. at 131. To the extent his allegations might support claims under the Fifth Amendment, those claims are dismissed.

**D. Fourteenth Amendment**

Fourstar invokes the Fourteenth Amendment. *See* Compl. (Doc. 2) at 8 ¶ III(A)(1). The Equal Protection Clause of the Fourteenth Amendment applies to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499–500 (1957); *United States v. Ayala-Bello*, 995 F.3d 710, 714 (9th Cir. 2021). Fourstar seems to allege that staff at CCC were required to "differentiat[e] between 'non-prisoners' ... and 'prisoners,'" Compl. at 8 ¶ III(A)(4), or to treat him as a "technical supervised release violator" rather than a "supervised release violator," *id.* at 5 ¶ I(A). The Court is not aware of any provision of law that required Fourstar to be treated differently than other persons in federal pretrial custody or serving a federal sentence at CCC. This claim is denied.

**E. 18 U.S.C. §§ 666 and 1343**

Fourstar claims the defendants violated one or both of these criminal statutes. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). The Racketeer-Influenced and Corrupt Organizations Act ("RICO") provides a private right of action where some violations of federal criminal statutes are concerned.

11

RICO does not extend to alleged violations of 18 U.S.C. § 666. *See* 18 U.S.C. §§ 1961(1), 1964(c).

RICO does extend to violations of 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). Fourstar alleges that Defendant Berkebile "committed fraud upon the United States by providing orders and agreements to his subordinates . . . to give new COVID-19 testing procedures . . . without differentiating between 'non-prisoners' . . . and 'prisoners.'" Compl. at 8; *see also id.* at 11. The dates on which Fourstar alleges this "fraud" occurred fall between September 9, 2020, and October 9, 2020, *see id.* at 8, 11, when he was a prisoner, *see* Judgment on Fifth Revocation (Doc. 356) at 2, *Fourstar*, No. CR 02-52-GF-DLC (D. Mont. July 21, 2020). To whatever extent pretrial detainees and prisoners should have been treated differently, *see, e.g., Gordon v. County of Orange*, 888 F.3d 1118, 1122–24 (9th Cir. 2018), Fourstar would not benefit from the distinction. Failure to make it could not have caused him personal injury or caused him to be "injured in his business or property." 18 U.S.C. § 1964(c).

These claims are dismissed.

**F. Americans with Disabilities Act**

Title II of the Americans with Disabilities Act, *see* Compl. at 8 ¶ III(A)(1), prohibits public entities from discriminating against persons with disabilities. The Act's definition of a public entity does not include private persons or entities. *See*

42 U.S.C. § 12131(1). This claim is dismissed.

### G. Rehabilitation Act

Fourstar cites § 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See* Compl. at 8 ¶ III(A)(1). Assuming the Act applies to CCC's parent company, *see, e.g.*, 29 U.S.C. § 794(b)(3)(A), (B), Fourstar's allegations suggest he had several medical conditions or concerns. *Cf.* 29 U.S.C. § 705(9)(A), (B); 42 U.S.C. § 12102(1), (2) (defining "disability"). They do not, however, suggest the existence of "any program or activity," *see id.* § 794(a), (b), that was generally available to others but from which he was excluded "by reason of" his disability, as the Act requires, 29 U.S.C. § 794(a). This claim is dismissed.

### H. EMTALA

The Emergency Medical Treatment and Labor Act provides a private cause of action against certain hospitals. The Act prohibits hospitals from transferring patients in need of care to another emergency medical provider before examining and stabilizing their conditions. *See, e.g.*, 42 U.S.C. § 1395dd(d)(2)(A); *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1165 (9th Cir. 2002); *Eberhardt v. City of Los Angeles*, 62 F.3d 1253, 1256–57 (9th Cir. 1995); *Brooker v. Desert Hosp. Corp.*, 947 F.2d 412, 414–15 (9th Cir. 1991).

Fourstar does not allege any facts that could support a claim under the Act. As he makes a claim regarding CCC under the same Act and over the same time

period in another case, *see* Compl. (Doc. 2) at 4, 7, *Fourstar v. Bludworth*, No. CV 21-13-GF-SPW (D. Mont. filed Feb. 5, 2021), there is no need to permit amendment in this case. This claim is dismissed.

### I. "Bad Men" Clause

Fourstar does not explain what right he believes he holds under the 1868 or 1851 Fort Laramie Treaties. The "bad men" provision of the 1868 Fort Laramie Treaty does not confer a right against arrest or trial or revocation by a federal court. *See United States v. Drapeau*, 414 F.3d 869, 877–78 (8th Cir. 2005); *see also, e.g.*, Order (Doc. 38) at 6, *Fourstar v. Eliason*, No. 4:16-CV-113-SPW (D. Mont. Dec. 6, 2018). To the extent Fourstar can be understood to make a claim under the treaties, the claim is dismissed.

### J. Medical Immunity Act

The Court is not aware of a "Medical Immunity Act." *See* Compl. at 8 ¶ III(A)(1). This claim is dismissed.

### K. First Step Act and Administrative Procedures Act

Fourstar claims he was entitled to "Team services," "gratuities, rent & deposit, home-confinement, pre-release," *see* Compl. at 9–10, "transfer to a facility within 500 driving miles of his residence," *id.* at 13, "recalculation of good time credits," *id.* at 13 n.1, and a "right to access the administrative remedy program," *id.* at 13, all under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194

(Dec. 21, 2018).

As noted above, Fourstar was sentenced on July 21, 2020, to serve four months in custody, followed by 29 months' supervised release. *See* Judgment on Fifth Revocation (Doc. 356) at 2–3, *Fourstar*, No. CR 02-52-GF-DLC (D. Mont. July 21, 2020). Good-time credits may accrue to prisoners serving "more than 1 year." *See* 18 U.S.C. § 3624(b)(1). The Court is not aware of a law entitling an inmate to earn good-time credits on a four-month custodial sentence or to have prior credits "carry over" from already-discharged original sentences or prior revocation sentences. Consequently, Fourstar was not eligible to be considered for placement on home confinement or in a pre-release center or to receive rent or other funds to facilitate such placements. *See id.* § 3624(g)(1)(A). These allegations are dismissed.

To provide relief on Fourstar's other claims to the benefits of the First Step Act, a declaratory judgment might clarify that Fourstar should have been placed at the facility closest to his home, received whatever "gratuities" the Act entitled him to, and obtained forms to file administrative grievances for rights or benefits under the First Step Act, all during the three to four months he was held at CCC in the middle of the COVID-19 global pandemic. But, in determining whether a request for declaratory relief[3] is moot, the question is "whether the facts alleged, under all

---

[3] Even assuming an action for mandamus may have been available at one point, *see, e.g.,*

15

the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975).

Fourstar now resides, not at CCC, but at Englewood Federal Correctional Institution in Colorado. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed June 17, 2021). He is serving a new custodial judgment following a sixth revocation of his supervised release in December 2020. He will not serve a term of supervised release when he discharges the current judgment. *See* Judgment on Sixth Revocation (Doc. 394) at 2, *Fourstar*, No. CR 02-52-GF-DLC (D. Mont. Dec. 10, 2020). Finally, pursuant to an executive order, federal prisoners are unlikely to be held at private prisons such as CCC. Thus, there is no "reasonable expectation that [Fourstar] would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *see also Public Utils. Comm'n v. FERC*, 100 F.3d 1451, 59–61 (9th Cir. 1996). His claims concerning the First Step Act, whatever their merits, lack "immediacy and reality" under these circumstances. They are moot.

Fourstar's allegations under the First Step Act and the Administrative

---

5 U.S.C. § 702; *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233–36 (10th Cir. 2005), it is not available now. Fourstar's allegations do not fairly implicate the validity of the judgment that underlay his custody at the time he filed the complaint. *See* Part A(1), *supra*.

16

Procedures Act, *see* Compl. at 8 ¶ III(A)(1), are dismissed.

### III. Amendment

The Court has considered whether any of Fourstar's claims could be cured by amendment. But the defects in his complaint do not involve omission of important elements. Fourstar would have to allege different facts, not merely additional ones, to cure the defects of his claims. An opportunity to amend would amount to an opportunity to file a different complaint. That is not the purpose of the amendment requirement. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992), *quoted in Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). Although many of Fourstar's allegations are conclusory, those allegations that are specific clearly show that he cannot state a claim on which relief may be granted.

Fourstar may have claims under state law. But, as all of his federal claims are dismissed for failure to state a claim, the Court will not exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

### IV. Certification Under Fed. R. App. P. 24

While the Court finds that all of Fourstar's allegations fail to state a claim, it declines to certify that an appeal would not be taken in good faith.

Accordingly, IT IS ORDERED:

1. Plaintiff Mitchell is DISMISSED.

2. Plaintiff Fourstar's motion to proceed in forma pauperis (Doc. 1) is

17

GRANTED. A collection order accompanies this Order.

3. All federal claims in the complaint are DISMISSED for failure to state a claim on which relief may be granted.

4. Any claims under state law are DISMISSED as the Court declines to exercise supplemental jurisdiction.

5. Dismissal is made without leave to amend.

6. The clerk shall enter, by separate document, a judgment of dismissal without leave to amend.

DATED this 25th day of June, 2021.

Susan P. Watters
United States District Court